Present:  All the Justices

TOYOTA MOTOR CREDIT CORPORATION

v.  Record No. 972212     OPINION BY JUSTICE ELIZABETH B. LACY
                                        September 18, 1998
C.L. HYMAN AUTO WHOLESALE, INC.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

In this appeal, we determine whether a lienholder whose lien was omitted from a duplicate certificate of title of an automobile because of the fraud of the owner can enforce that lien against a subsequent bona fide purchaser of the automobile.

The facts are not in dispute.  In February 1996, Traci Bowden purchased a Toyota vehicle pursuant to a retail installment contract.  The contract was assigned to Toyota Motor Credit Corporation (TMCC) for value.  TMCC's security interest was noted on the certificate of title issued by the Virginia Department of Motor Vehicles (DMV).  TMCC retained possession of the certificate of title.

In July 1996, Bowden applied for a duplicate certificate of title from DMV, representing that TMCC's lien had been satisfied and released.  Bowden's application was accompanied by a letter purportedly from TMCC releasing its lien.  This letter was a forgery.  Based on these fraudulent representations, DMV issued a duplicate certificate of title

showing "no liens" against the vehicle.  Bowden then sold the vehicle to C.L. Hyman Auto Wholesale, Inc. (Hyman).

When Bowden fell behind in her payments on the Retail Installment Agreement, TMCC began efforts to bring the account current or to recover the vehicle.  Eventually, TMCC discovered Bowden's fraud and that she had sold the vehicle to Hyman.  TMCC asked Hyman to return the vehicle.  When Hyman refused, TMCC filed a motion for judgment in detinue against Hyman.  Following a hearing, the trial court found that Hyman was a bona fide purchaser for value without notice of the fraud, was "entitled to rely on the certificate issued by the DMV," and was not subject to TMCC's lien.  The trial court dismissed the motion for judgment.  We awarded TMCC an appeal.

As the trial court recognized, both parties in this litigation are innocent victims of the fraudulent acts of a third party:  "Each has followed the law and done everything which could reasonably be expected in order to protect its interests . . . .  However, the case is here, and, like it or not, the loss must fall on one of these two innocent parties." In determining where the loss falls, the trial court concluded that the motor vehicle titling statutes, as interpreted by this Court, require a decision in favor of Hyman.  We agree and will affirm the judgment of the trial court.

2

The motor vehicle titling statutes, Title 42, Chapter 6, were enacted to protect the public by providing for the issuance of certificates of title as evidence of ownership of motor vehicles and to provide potential buyers and creditors with a single place where information about the status of motor vehicles could be found. Maryland Credit Fin. Corp. v. Franklin Credit Fin. Corp., 164 Va. 579, 583, 180 S.E. 408, 409-10 (1935). These statutes, originally enacted in 1924, eliminated any requirement that a lien against a motor vehicle be recorded in the county or city where the purchaser or debtor resides or in any other manner available for recording a security interest in personal property, but imposed the new condition that a security interest in a motor vehicle would not be perfected "as to third parties" unless shown on the certificate of title. Code § 46.2-638; Bain v. Commonwealth, 215 Va. 89, 91, 205 S.E.2d 641, 643 (1974).

Code § 46.2-638 specifically provides that a certificate of title showing a security interest "shall be adequate notice to the Commonwealth, creditors, and purchasers that a security interest in the motor vehicle exists." We have recognized that the converse is also true.

> [W]hen a certificate of title is issued which fails to show a lien or encumbrance, it is notice to the world that the property is free from any lien or encumbrance, and if transferred to a bona

3

fide purchaser the latter would obtain a good
title.

Maryland Credit, 164 Va. at 582-83, 180 S.E. at 409.  To hold
otherwise would eliminate the ability of potential buyers and
lenders to rely on the information contained in certificates
of title.

Inevitably, there will be occasions when the information
regarding the status of liens contained in a certificate of
title will be in error.  If the erroneous information is a
notation that no liens exist against the vehicle, the interest
of the bona fide purchaser for value prevails over the
interest of the creditor with a security interest in the motor
vehicle.  Id.  This rule applies whether the error was the
result of an innocent mistake or, as in this case, of
fraudulent acts by the owner.  A rule which allowed reliance
on the absence of lien notations on a certificate of title if
such absence resulted from an innocent mistake or clerical
error but not if such absence resulted from fraud would negate
any ability to rely on the certificate of title.  Under such a
rule, a potential purchaser or lender would always have to
conduct an independent search to determine if, in fact, there
are no liens against the vehicle, thus defeating the intent of
the General Assembly in creating a single repository for
recording liens against motor vehicles.  In this case,

4

therefore, Hyman was entitled to rely on the absence of any lien notations on the certificate of title, and TMCC cannot enforce its security interest against Hyman.

TMCC asserts that this conclusion is in conflict with established principles underlying the law relating to title expressed in First Nat'l Bank of Waynesboro v. Johnson, 183 Va. 227, 31 S.E.2d 581 (1944), and Code § 8.2-403(1), as well as specific cases decided by this Court in which a lienholder was allowed to enforce its lien against a good faith purchaser for value without notice, Rudolph v. Farmers' Supply Co., Inc., 131 Va. 305, 108 S.E. 638 (1921), and McQuay v. Mount Vernon Bank and Trust Co., 200 Va. 776, 108 S.E.2d 251 (1959). Close examination of these cases shows, however, that the conclusion we reach today is not contrary to the authority cited by TMCC.[*]

Longstanding Virginia law provides that one who does not have title to goods cannot transfer title to a buyer, even a bona fide purchaser for value without notice. Johnson, 183 Va. at 236, 31 S.E.2d at 585. Thus, a thief cannot pass title to stolen goods even to an innocent purchaser who pays for the stolen goods. However, Virginia law has also recognized that

---

[*] TMCC also argues that DMV can only release a lien pursuant to the procedures set out in Code § 46.2-642. However, this case does not involve the release of a lien but its enforceability under certain circumstances.

a person who purchases goods from one possessing only voidable title can nevertheless receive good title to the goods purchased. Oberdorfer v. Meyer, 88 Va. 384, 386, 13 S.E. 756, 756-57 (1891); Old Dominion Steamship Co. v. Burckhardt, 72 Va. (31 Gratt.) 664, 668 (1879). These principles have been implicitly recognized in Code § 8.2-403(1). That subsection states, in pertinent part:

> A purchaser of goods acquires all title which his transferor had or had the power to transfer . . . . A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
> . . .
> (d) the delivery was procured through fraud punishable as larcenous under the criminal law.

Citing the principles embodied in Code § 8.2-403, TMCC argues that Bowden could not pass "greater" title in the automobile than she owned. Since her title was subject to the encumbrance of TMCC's lien, Hyman's title must also be subject to the lien.

TMCC's argument, however, misinterprets the purpose and applicability of Code § 8.2-403. The statute deals with the power of an owner with void or voidable title to pass good title to a bona fide purchaser for value. It does not apply to the "rights . . . of lien creditors." Code § 8.2-403(4). In this case, Bowden had a "good" title to the automobile, and

6

she passed a good title to Hyman.  She was not a stranger to title, and her title was not made "void" or "voidable" by TMCC's security interest.  Code § 8.2-403 and the principle described in Johnson, therefore, simply do not apply.

Finally, the two Virginia cases cited by TMCC in which an innocent lienholder has prevailed over a bona fide purchaser do not require a different result in this case.  Both of these cases involve sales to bona fide purchasers for value by motor vehicle dealers and the application of the doctrine of estoppel based on the likelihood that the secured motor vehicle would be put into the stream of commerce.  In neither case did the Court consider the impact of the motor vehicle titling statutes or the extent to which potential purchasers are entitled to rely upon a certificate of title which failed to note an existing lien.

Rudolph v. Farmers' Supply Co., as TMCC notes, was decided prior to the enactment of the motor vehicle titling statutes in 1924.  Rudolph, therefore, did not consider the effect of a certificate of title issued by DMV showing no liens on the motor vehicle, because the General Assembly had not yet authorized its issuance.  Consequently, the decision in Rudolph is not controlling in this case.

The second Virginia case relied on by TMCC, McQuay v. Mount Vernon Bank and Trust Co., was decided after the

7

enactment of the titling statutes.  However, it is not clear whether the bona fide purchaser in that case, McQuay, ever saw or received any title certificate from the seller or DMV and he did not assert a defense based on reliance on a certificate of title issued by DMV showing no liens on the vehicle.  The ability to rely on a certificate of title issued with no notations of liens, therefore, was not at issue, and thus the holding in McQuay does not control the case before us.

For the above reasons, we conclude that the trial court properly held that TMCC was not entitled to enforce its lien against Hyman because Hyman, a bona fide purchaser for value without notice of the lien, was entitled to rely on a certificate of title which did not contain a notation of the lien.

Affirmed.

8