**In re James Leroy DARRINGTON, Jr., and Deitra L. Darrington.**

**Chrysler Financial Company,**

**v.**

**James L. Darrington, Jr., and Lynn Tavenner, Trustee.**

**Bankruptcy No. 98–36943–T. Adversary No. 99–3008–T.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Aug. 20, 1999.

---

Kevin D. Holden, Spotts, Smith, Fain & Buis, Richmond, for Chapter 7 Trustee.

William W. Roberts, Richmond, H. Tucker Dewey, Holly N. Knight, Hale, Headrick, Dewey & Wolf, Memphis, TN, for Chrysler.

Thomas Steger, Chesterfield, for Debtor.

Lynn Tavenner, Richmond, Chapter 7 Trustee.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

On July 7, 1999, the court held hearing on Chrysler Financial Company's motion for summary judgment on its complaint to determine validity, priority, and extent of lien and for relief to reform the certificate of title. By its complaint, Chrysler seeks to have the court rule that Chrysler holds a security interest superior to the interest of the trustee in bankruptcy in debtor James L. Darrington, Jr.'s, motor vehicle. Although named as a defendant, the debtor took no part in this proceeding. At the conclusion of argument the court took the motion for summary judgment under advisement.

For the reasons stated in this opinion, Chrysler's motion will be denied. Because Chrysler cannot prevail under the undisputed facts of the case, its complaint will be dismissed.

### Findings of Fact

On November 7, 1995, the debtor entered a retail installment contract for the purchase of a 1994 Jeep Cherokee. The contract granted Chrysler a security interest in the vehicle.

Chrysler submitted an application for certificate of title and registration to the Virginia Department of Motor Vehicles (DMV) on November 7, 1995. A certificate of title was subsequently issued to Chrysler. However, this title was lost by Chrysler, and no copies of the original have been found.[1]

On October 10, 1996, Chrysler submitted to DMV an application for a duplicate certificate of title. The application correctly reflected Chrysler as the lien holder. Nevertheless, on October 15, 1996, DMV issued a duplicate title that listed Crestar Bank as lien holder. The duplicate title was at all times in the possession of Chrysler who did not attempt to reform the certificate of title to correctly reflect its security interest until after this bankruptcy case was filed.[2] An outstanding balance of $14,372.74 remains due on Chrysler's loan.

Debtors filed this chapter 7 case on September 18, 1998, and defendant Lynn Tavenner serves as trustee.

### Discussion And Conclusions of Law

Chrysler brought this complaint and summary judgment motion to determine its interest in the vehicle.

### Summary Judgment Standard

Chrysler moves for summary judgment under its complaint. A motion for summary judgment shall be granted when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hinkleman v. Shell Oil Co.,* 962 F.2d 372, 375 (4th Cir. 1992). In this case, the parties agree that there are no material facts in dispute and that the court should rule on Chrysler's motion. In fact, if the motion is not granted, then the complaint must be dismissed.

### Chrysler's Lien

■ The issue the court must address is whether under Virginia law Chrysler held

---

1. Although the parties assume that the original title properly reflected Chrysler as lien holder, this has not been established.

2. Crestar Bank, which has no interest in the vehicle, has assigned any interest it may have had to Chrysler.

a prepetition perfected security interest in debtor's motor vehicle despite DMV's clerical error in listing Crestar Bank as the lien holder. This is apparently an issue of first impression under Virginia's motor vehicle statutes.

■ For the perfection of a security interest in a motor vehicle, Virginia requires the security interest to be reflected on the face of the certificate of title. *See* Va.Code § 46.2–638; *see also GMAC v. Smith,* 377 F.2d 271, 272–73 (4th Cir.1967); *In re Johnson,* 179 B.R. 800, 804 (Bankr. E.D.Va.1995); *Lubman v. J.B. Eurell, Co. (In re Fregosi),* 23 B.R. 641, 643 (Bankr. E.D.Va.1982). For the security interest to be properly reflected on the title, the creditor must submit an application to DMV. *See* Va.Code §§ 46.2–623, 46.2–637, 46.2– 639. Virginia law requires DMV to issue a certificate of title which reflects the creditor's lien as shown in the application. *See* Va.Code § 46.2–636 (stating the certificate of title "shall show all security interests disclosed by the application").

■ A certificate of title showing a creditor's security interest is adequate notice to the commonwealth, creditors and purchasers that there is a security interest in the motor vehicle. *See* Va.Code § 46.2– 638; *Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.,* 256 Va. 243, 506 S.E.2d. 14, 15 (1998). Thus, Virginia Code § 46.2–638 provides a uniform and simple means of notice to third parties regarding the existence of a security interest in a motor vehicle.

■ Consistent with the policy reflected in the motor vehicle titling statutes, Virginia courts addressing these provisions have consistently held that where the certificate of title does not reflect a lien holder's interest in the vehicle, the security interest has not been perfected. *See, e.g., Richlands Nat'l Bank v. Smith,* 34 B.R. 749, 752 (W.D.Va.1983); *In re Bonner,* 206 B.R. 387, 388 (Bankr.E.D.Va.1997); *General Elec. Capital Corp. v. Spring Grove Transport., Inc. (In re Spring Grove Transp., Inc.),* 202 B.R. 862, 864–65

(Bankr.E.D.Va.1996); *In re Johnson,* 179 B.R. at 804; *In re Fregosi,* 23 B.R. at 643; *C.L. Hyman Auto Wholesale, Inc.,* 506 S.E.2d at 17; *Bain v. Commonwealth,* 215 Va. 89, 205 S.E.2d 641, 643 (1974).

Most recently the Virginia Supreme Court has addressed the application of the titling statutes and perfection of a secured interest in *Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.,* 506 S.E.2d 14. In that case a debtor applied to DMV for a duplicate certificate of title along with a fraudulent representation that Toyota's security interest had been released. *See id.* at 15. Consequently, DMV issued a new title and released Toyota's lien on the title. *See id.* Subsequently, the debtor transferred the vehicle to a bona fide purchaser for value. *See id.* The Virginia Supreme Court held that as between two innocent parties, Toyota and the bona fide purchaser for value, the purchaser was entitled to take free of Toyota's security interest. *See id.* at 16. The Supreme Court focused on the public policy behind Virginia Code § 46.2–638 and concluded that a purchaser for value must be able to rely on the certificate of title without resorting to outside investigation. *See id.* at 15–16. The court, concerned with reliability of certificates of title for potential buyers, held that the subsequent bona fide purchaser was entitled to rely on the absence of any lien notations. *See id.* at 17. Therefore the creditor could not enforce its security interest against the bona fide purchaser. *See id.*

Here, pursuant to 11 U.S.C. § 544(a)(1), the trustee holds the position of a hypothetical judgment lien creditor effective on the date the debtors filed their bankruptcy petition; the trustee is thus entitled to priority over unperfected liens. At the time the bankruptcy case was filed, Crestar was improperly listed on the certificate of title as the lien holder. If a hypothetical lien creditor or purchaser had attempted to ascertain the secured interest in the vehicle, they would likely have been informed by Crestar that it did not hold a security interest. Chrysler's security interest would not have been apparent nor

easily ascertainable. Instead, any potential bona fide purchaser or creditor would have had to resort to further investigation of the title and might even have obtained a release from Crestar.

As stated above, the overriding purpose of the Virginia titling statutes is to allow third parties to rely on a certificate of title for lien information; interested parties should not have to resort to outside investigation to determine whether a creditor holds a security interest in a vehicle. The court therefore concludes that Chrysler's security interest was not properly perfected because it was not reflected on the title. The court recognizes that this may seem a harsh result due to DMV's failure to properly issue the duplicate title; however, Chrysler had almost two years to correct the error, which it failed to do.

Chrysler's motion for summary judgment will therefore be denied. Of course, the result of the court's ruling is that Chrysler holds an unsecured claim in the bankruptcy case, and the trustee may sell the asset for the benefit of creditors.

An order consistent with this opinion will be entered.